UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

JOSE TORRES,

    Plaintiff,

v.

GSD CONTRACTING, LLC, a Florida limited liability company, and JASON BATES, an individual,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Jose Torres ("Torres"), through his undersigned attorneys, files this Complaint against the Defendants, GSD Contracting, LLC, ("GSD" or "corporate Defendant") a Florida Limited Liability Company, and Jason Bates ("Bates"), an individual (hereinafter referred to collectively as, "Defendant"), and alleges:

## JURISDICTION AND VENUE

1. This suit is brought against the Defendant pursuant to 29 U.S.C. § 201 *et seq.* ("Fair Labor Standards Act" or "FLSA").

2. Jurisdiction is conferred upon this Court by:

    (a)    28 U.S.C. § 1331;

    (b)    28 U.S.C. § 1343; and

    (c)    29 U.S.C. § 216(b), which allows for a FLSA claim to be brought in any court of competent jurisdiction.

3. Venue is proper for the Southern District of Florida because:

(a) Torres was employed in the Southern District of Florida by the corporate Defendant which at all material times conducted, and continues to conduct, business in Broward County; and

(b) Additionally, venue lies because the acts that gave rise to Plaintiff's claims occurred in the Southern District of Florida and because the corporate Defendant keeps an office for the transaction of its customary business in this district (GSD Contracting, LLC is headquartered in Broward County, and Jason Bates resides in Broward County).

## CONDITIONS PRECEDENT/ADMINISTRATIVE EXHAUSTION

4. Plaintiff has complied with all conditions precedent in this case, or they have been waived.

## PARTIES

5. Torres resides within this judicial district.

6. Defendant GSD is a Florida limited liability company, at all times material, conducted substantial and continuous business in this judicial district, and is subject to the laws of the State of Florida and the United States. Defendant GSD owns and operates commercial contracting business in Fort Lauderdale, Florida at which for all material times Torres worked for and his labor benefited.

7. The corporate Defendant paid employees and paid Torres (through Bates) and has gross annual sales volume that greatly exceeds $500,000 annually (around several million), at least for years 2018-20. The corporate Defendant has two or more employees engaged in commerce, as they have two or more employees who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida. For example, in the South Florida location Defendant has at least 15 employees two or more who use computers, computer software, office supplies, medical equipment, copiers which were manufactured outside the

State of Florida (and thus have moved in interstate commerce), and use cars and vehicles which vehicles and gasoline were manufactured outside the State of Florida.  Further, the Defendant has various employees make long distance phone calls (suppliers, internet purchases, commercial contractor equipment providers, vendors, and others) and sent emails to individuals who reside out of the State of Florida regularly and recurrently to effectively communicate for the businesses to operate.

8. Additionally, Torres is entitled to individual coverage, as he regularly and recurrently made calls to vendors, suppliers, contractors, client representatives, prospective customers, and customers across state lines and thus he participated in the actual movements of goods or services and commerce across state lines.

9. Individual Defendant Bates is the Executive Vice President of GSD of the corporate Defendant and operates it day-to-day and has operational control over the corporate Defendant deciding financial decisions and having say over numerous employees and directing their work day-to-day, including how much they would be paid and when they would be paid, as the individual Defendant had the power the hire and fire (for example, he terminated Torres), daily managed the company and was ultimately responsible for the profitability of the business.

10. Concerning Torres, Defendant Bates, told him what to do, managed the operations day-to-day, determined how much, how often, when, and whether or not, he was paid (reimbursements were never received by Torres as promised, his pay was cut in half because of payroll's purposeful late reporting of Torres' hours worked denying him part of his workers' compensation benefits, manipulating his timesheet/payroll records/hours logged to reflect less hours), and Torres had to follow the individual Defendant's orders.

11. The corporate Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act, and so too is the individual Defendant.

12. The corporate Defendant is an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act. The corporate Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act. During all times relevant to this action, the corporate Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

13. Torres was an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act.

14. Torres was a non-exempt employee of Defendant who was subject to the payroll practices and procedures described in Paragraphs 23, 24, and 25 below, and who worked in excess of forty (40) hours during one or more wocompany, rkweeks within three (3) years of the filing of this Complaint. At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Torres performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

## STATEMENT OF FACTS

15. Within the past three (3) years (2018 through 2021), Torres worked for the Defendant performing various duties. Torres worked under the title "carpenter", which duties included manual labor performing actual construction work (largely carpentry skills) and visiting various job sites to determine the status of various construction projects and the work being performed to report back to management. Torres had no ability to hire or fire or make effective recommendation for such decisions, nor did he truly supervise two or more full-time employees. Torres, while having been assured a path to further his career and move up in the company, he was never given those opportunities and remained a carpenter for the duration of his employment with GSD. Torres was a nonexempt employee entitled to overtime. Torres job was a full-time position worked forty (40)

hours a week. Torres had to clock in when he arrived at the first job site and clock out upon leaving the last job site of the day despite the fact that he was required to work before leaving his home in the morning, during his commute to and from work, and after he returned home. Torres worked the forty (40) hours required of him for the job but was not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

On November 3, 2020, Torres was injured on the job and filed for workers' compensation and became disabled. Torres fell 12 feet and broke 3 bones in his right foot. Torres missed 5 months of work but came back to work on or about April 4, 2021. The corporate president, with whom Torres had been in communication with since the injury, assured him that Torres would be assigned to a hotel jobsite when he returned from workers' compensation leave. However, when Torres returned to work, he informed the Defendant that he needed a couple of reasonable accommodations, as instructed by his doctor. For example, he could not perform some of the manual labor (carpentry work) temporarily.

16. Torres's duties included both manual labor performing actual construction work (largely carpentry skills) and visiting various job sites to determine the status of construction projects being performed to report back to management.

17. Torres did not have the ability to hire or fire anyone (nor did he hire or fire anyone), and he did not regularly and customarily direct the work of any employees, much less two or more full-time workers.

18. Torres was only given tasks that were designed to facilitate production work of the Defendant, such as the tasks described above concerning carpentry work and visiting jobsites to report back to management the status of various construction projects, all of which consisted of regular, recurrent, and routine work that did not involve his exercising independent judgment and discretion on matters of significance.

19. Torres's primary duties were not management.

20. During Torres's employment, Torres did not have any authority to interview, select, and/or train employees. Torres did not have any authority to set and adjust the rates of pay and hours of work for any employees. Torres had no authority to direct the work of employees. Torres did not maintain production or sales records at all when he worked for the Defendant, nor did he use any such records to supervise or control any employee. Torres did not supervise any staff. Torres had no say in the companies financials, for example, concerning wages paid to employees, Torres had no say concerning what any particular employee would be paid, how many employees could work, when, what hours they could work, whether their pay should be increased or decreased, what tasks they would be performing, as all of that was determined by the Defendants.

21. While Torres worked for the Defendants, he never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status. While Torres worked for the Defendants, he never handled employee complaints and grievances, as that was for the Defendants to do. Also, Torres never disciplined employees, nor did he have the power or authority to do that. Torres did not plan any work for any employee, as there was no work to plan. Torres never determined any techniques to be used by employees to do their job. Torres never apportioned work among any employees, as there were no employees who reported to him to whom to apportion work. Torres never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that. Torres had no involvement in controlling the flow and distribution of materials or merchandise and supplies. Torres had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. Torres had no involvement with respect to budgeting. Torres was not involved in reviewing any sort of financial documents or statements of the buildings, and he did not review any such documents, nor was Torres supposed to. Torres

had no involvement in monitoring or implementing legal compliance measures. There were no legal issues that Torres had anything to do with in terms of deciding how they would be handled or dealt with while he worked for Defendant, nor did he have anything to do with paperwork concerning new employees or hires. Torres simply followed the established techniques and procedures with respect to his duties, all of which were repetitive, routine, and recurrent work.

22. Torres did not do anything that could have resulted in financial losses for the Defendants. Torres did not perform work that was directly related to management or general business operations of Defendants or their customers, because Torres did not perform work directly related to assisting with the running or servicing of the business, but rather was engaging in production work (carpentry skills and manual labor and driving to jobsites to report back to management as to the status of construction). Torres also did not perform work directly related to the management or general business operations of the Defendants because Torres did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Rather, Torres was one more person looking to perform production work the Defendants rely on so heavily, assist with the production work of getting money collected.

23. In the course of employment with Defendant, Torres worked the number of hours required of him, but was not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

24. Torres regularly worked in excess of forty (40) hours per workweek—60-70 hours per week on average.

25. The Defendant should have partial accurate records of hours worked before May 2021 when Defendant disallowed Torres from personally submitting his time to payroll. After Torres was required to start sending his payroll information daily to superintendent Albert Hernandez, his hours were being entered incorrectly and resulted in workers compensation lowering his pay because the Defendant was under-reporting Torres's hours. Torres was required to submit hours worked only for those hours once he arrived at the first job site of the day and upon leaving the last job site of the day, and therefore, Torres performed significant work for which he was not paid.

26. Torres has retained the undersigned legal counsel to prosecute this action in his behalf and has agreed to pay them a reasonable fee for their services.

27. Torres is entitled to his reasonable attorneys' fees for prosecuting this action, whether or not he is the prevailing party.

## COUNT I – RECOVERY OF OVERTIME COMPENSATION

28. Torres re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 27 above as though fully set forth.

29. Torres is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

30. By reason of the intentional, willful, and unlawful acts of Defendant, Torres has suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

31. As a result of the Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, Torres is entitled to liquidated damages as provided in § 216 of the FLSA, and is entitled to recover damages for three (3) years.

WHEREFORE, for workweeks within three (3) years of the filing of this Complaint, Torres demands judgment against Defendants for the wages and overtime payments due to him for the hours

worked by him for which he has not been properly compensated (back pay), liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: December 5, 2021.

                                                                The Kleppin Firm, P.A.
8751 W. Broward Blvd., Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax (954) 474-7405
E-mail: amorgado@gkemploymentlaw.com

By: /s/Allyson Morgado
     Allyson Morgado
     Fla. Bar No. 91506